799 So.2d 578 (2001)
STATE of Louisiana
v.
Joe Forrest HOLLEY.
No. 01-0254.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*580 Ellison Carruth Travis, Assistant Attorney General, Baton Rouge, LA, Counsel for Plaintiff/Appellee State of Louisiana.
William Daniel Dyess, Attorney at Law, Many, LA, Counsel for Defendant/Appellant Joe Forrest Holley.
Court composed of NED E. DOUCET, Jr., Chief Judge, OSWALD A. DECUIR and MARC T. AMY, Judges.
AMY, Judge.
The defendant was convicted of attempted forcible rape and sentenced to serve twenty years at hard labor, ten years suspended. The defendant appeals his conviction and sentence.

Factual and Procedural Background
On March 23, 1996, Joe Forrest Holley and his eight-year-old stepdaughter, J.S., went to purchase cattle in Sabine Parish. The State alleges that at some point during their trip, Mr. Holley stopped his truck in a clearing and instructed J.S. to exit the vehicle. The State contends that Mr. Holley put a blanket in the back of the truck and told J.S. to disrobe. According to J.S.'s testimony, Mr. Holley placed a liquid substance on her and instructed her to lie down on her stomach. She reported that he then got on top of her and penetrated her with "something." At some point thereafter, J.S. told her mother about the incident and, on July 7, 1996, they reported it the local sheriff's office and the Office of Community Services (OCS).
On November 8, 1999, Mr. Holley was indicted for aggravated rape of J.S., a child under the age of twelve, in accordance with La.R.S. 14:42(A)(4). Prior to trial, the State stipulated that it would not seek the death penalty in the case. At a subsequent hearing, the defendant waived his right to a jury trial. A bench trial was held June 13-14, 2000, after which the trial court found the defendant guilty of attempted forcible rape in accordance with La.R.S. 14:27 and 14:42.1. On October 17, 2000, the defendant was sentenced to serve twenty years at hard labor, with ten years suspended. One year of the sentence is to be served without the benefit of parole, probation or suspension of sentence. During the suspended portion of the sentence, the defendant is to be on supervised probation for five years subject to general and special conditions. The defendant's motion for reconsideration of sentence was subsequently denied.
The defendant appeals his conviction and sentence, asserting the following assignments of error:
1. The Trial Court erred in finding that the State of Louisiana proved beyond a reasonable doubt or presented sufficient proof of the essential elements of the offense of attempted forcible rape to find the defendant, Joe Forrest Holley, guilty of attempted forcible rape and therefore the conviction must be reversed since a rational trier of fact could not have found him guilty based upon the evidence or lack of evidence presented by the State of Louisiana.
2. The Trial Court erred in allowing the State of Louisiana in violation of LSA-C.E. Art. 403, 404(b) and the landmark case of State v. Prieur, 277 So.2d 126 (1973) to introduce *581 evidence of "bad acts evidence" which was severely prejudicial to the defendant and the fair administration of justice.
3. The Trial Court erred in allowing the testimony of the Department of Social Services worker to testify concerning information received or obtained from the use of a videotaping which was not admitted, but had been utilized by the State and a social worker for purposes of obtaining information, all in violation of LSA-R.S. 15:440.1, et. seq.
4. The Trial Court erred in sentencing the defendant to an excessive sentence, all of which was cruel and unusual punishment.
5. The defense in this case was ineffective and deprived the defendant of a fair trial.

Discussion of the Merits

Sufficiency of the Evidence
In the first assignment of error, the defendant claims the State did not prove the elements of attempted forcible rape. He points out that there is no proof that he either attempted or actually inserted his penis in the victim's vagina. He also points out the lack of physical evidence and the numerous recantations by the victim.
A panel of this court in State v. Miller, 98-1873, p. 5 (La.App. 3 Cir. 10/13/99); 746 So.2d 118, 120, writ denied, 99-3259 (La.5/5/00); 761 So.2d 541, explained:
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La. 1981). The role of the factfinder is to weigh the respective credibility of each witness. Therefore, the appellate court should not second guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Although initially charged with aggravated rape, the trial judge found the defendant guilty of attempted forcible rape. The essential elements of forcible rape are found in La.R.S. 14:42.1(A), which, at the time of the alleged events, provided that "[f]orcible rape is rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." An attempt occurs when a person having a specific intent to commit a crime, "does or omits an act for the purpose of and tending directly toward the accomplishing of his object[.]" La.R.S. 14:27(A).
In proving its case, the State relied primarily on the testimony of the victim, J.S., who was the defendant's eight-year-old stepdaughter at the time of the alleged rape. J.S. testified that the incident occurred when she accompanied the defendant to look at some calves to purchase. She claimed that, afterwards, they stopped at a clearing. According to the victim, the defendant put a blanket in the back of his truck and told her to get out and take off *582 what she had on. The defendant then put something on the victim which she described as "nasty ... gooey, slimy sort a like." She was instructed to lie down on her stomach and the defendant got on top of her and "stuck something in [her]." When asked if she felt him inside her, the victim responded in the affirmative. J.S. testified that she told the defendant to stop, but she could not remember what else she told him. She stated that, afterwards, the defendant gave her a towel, telling her to wipe off and put her clothes back on. They then got back in the truck and left.
In support of J.S.'s testimony, the State presented evidence regarding the victim's prior statement to Debra Waters, a social worker with the OCS. Ms. Waters testified that on July 7, 1996, she received a report that the victim and her mother were at the sheriff's office with a complaint of sexual abuse. Ms. Waters spoke to the victim's mother and arranged for the victim to undergo a physical examination. Several days later, Ms. Waters videotaped the victim's statement in the presence of a juvenile officer and the victim's mother. At trial, Ms. Waters testified as to the contents of the victim's statement to her, which was essentially the same description of the event to which J.S. testified at trial. According to Ms. Waters, the victim told her she took off her shoes and pants at the defendant's request. He then removed his pants, got on top of her, and attempted to penetrate her. The victim told Ms. Waters that when the incident was over, the defendant gave her a towel to clean herself and he then used it to clean himself. Ms. Waters described the victim's responses and reactions as very credible and noted she did not rely on coaching from her mother. Ms. Waters also stated that J.S. underwent a medical examination at her request and there were "no positive findings."
The State also presented the testimony of Donna Handy, the victim's babysitter. Ms. Handy testified that at some point after the alleged incident, she and the victim's mother sat down with J.S. and questioned her about the rape allegation. Ms. Handy stated that for approximately five hours, the victim maintained that the defendant had raped her and that she was telling the truth, but she later told them that it wasn't the truth. According to Ms. Handy, J.S. recanted her story only after they had "badgered" her for several hours. She testified that they repeatedly told J.S. that "she was going to be in a lot of trouble and she'd get taken away from her mother," and that she "had to think about God and what she was sayingthat she had to tell the truth." Ms. Handy testified they "just kept telling her she was going to be in trouble." She explained that J.S. eventually put her head down, began to cry, and stated that the incident didn't happen.
At trial, the defendant contended that J.S.'s allegation was fabricated. Testifying on his own behalf, the defendant gave his version of the day's events. He denied ever stopping in a clearing with J.S. or attempting to touch her in an improper manner.
In an attempt to discredit J.S.'s testimony, the defendant presented evidence that J.S. recanted her story of the alleged rape on several occasions. The defendant introduced the testimony of several witnesses who heard J.S. state that the rape incident did not happen. The record also contains three letters allegedly written by J.S. which state either that she lied about the rape or that the incident did not happen.
When called on rebuttal, the trial court specifically addressed J.S. and stressed to her that no matter what the truth was, it was important that she tell the truth. J.S. *583 maintained that the incident occurred and that no one told her to make it up. When questioned about the evidence of her recantations, J.S. admitted to writing two notes to her mother, one stating that she was sorry again for lying about the rape and that "Joe did not touch me," but she testified that the notes were not true and only wrote them because she thought that it was what her mother wanted her to do. It was the State's allegation that J.S.'s mother persuaded J.S. to deny that the rape happened because she wanted to continue her relationship with the defendant. As for the remaining recantations testified to by the various witnesses, J.S. either denied making the statement or did not remember discussing the incident with those individuals. In State v. Bernard, 98-994 (La.App. 3 Cir. 2/3/99); 734 So.2d 687, 691, a panel of this court stated:
The testimony of one witness, if believed by the trier of fact, is sufficient to support the requisite factual conclusion in the absence of internal contradictions or irreconcilable conflict with the physical evidence. State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793. The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Tompkins, 403 So.2d 644 (La. 1981), appeal after remand, 429 So.2d 1385 (La.1982).
Here, the trial judge, as the trier of fact, was presented with the contradictory testimony of the victim and the defendant regarding the events of March 23, 1996. Ultimately, the trial judge chose to accept J.S.'s version of events, finding the defendant guilty of attempted forcible rape. As stated previously, it is the primary function of the factfinder to weigh the respective credibility of each witness, and the resulting credibility determinations should not be second-guessed on appeal beyond the sufficiency evaluations under the Jackson standard of review. State, ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982). Therefore, after viewing the facts of this case in the light most favorable to the State, we find no clear error in the trial judge's decision to credit J.S.'s testimony or in the determination that the State carried its burden of proving the essential elements of attempted forcible rape. This assignment of error is without merit.

Other Crimes, Acts, or Wrongs Evidence
In this assignment of error, the defendant claims the trial court erred in allowing the State to introduce evidence of the defendant's prior bad acts. Specifically, the defendant refers to the testimony of Debra Waters, Terry Lambright and Tammy Crowder, social workers with the Vernon Parish Office of Community Services, who had investigated child abuse complaints against the defendant and documented information concerning the defendant's excessive discipline of his stepchildren. The defendant claims this was simply an attempt by the State to portray him as a "bad person" and the evidence was extremely prejudicial to him.
La.Code Evid. art. 404 provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by *584 the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
A pretrial hearing on the admissibility of the evidence was held on April 10, 2000. The State argued that the prior acts of physical violence were relevant to show why the victim would not resist the rape, why she did not immediately report the incident to her mother, and why she did not report the incident until the defendant moved out of the home. The State asserted that being the subject of prior physical abuse and observing abuse of her siblings resulted in intimidation, which diminished J.S.'s ability to resist the sexual advances made by the defendant. The State urged that it also explained her failure to report the incident while the defendant lived with her family. When specifically asked how this evidence fit under an exception to the general rule of exclusion of such evidence, the State responded:
[I]t shows opportunity because he's in the house and he has the ability to get the kids to make them do what he wants them to do in preparation and plan and knowledge of. To me those are all intertwined in this. It is hard to separate and pigeon hole into each one. Our argument is that his relationship is one activity and the abuse over here is inseparable and is a part of their lack of consent and their lack of their willingness not to tell what has happened.
While "other wrongs" evidence is generally inadmissible at trial, it may be used when "it tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character." State v. Jackson, 98-277, p. 7 (La.App. 3 Cir. 2/3/99); 734 So.2d 658, 662, quoting State v. Mitchell, 94-521 (La.App. 3 Cir. 11/2/94); 649 So.2d 569. We find the evidence of the defendant's prior physical abuse of J.S. and the other children mentioned at trial was relevant in establishing the defendant's tendency to use force or threat of physical abuse toward the victim in order to get obedience or demonstrate a consequence of disobedience. Thus, the evidence was used to prove the State's theory that the resulting intimidation from the physical abuse diminished the victim's will to resist the defendant and to establish an explanation for J.S.'s delayed reporting of the incident to her mother. We conclude that the trial court did not err in allowing the State to admit the "other wrongs" evidence in this case.

Victim's Videotaped Statement
The defendant claims that the trial court erred in allowing Debra Waters to testify regarding the information obtained in the victim's videotaped statement. He claims that since the victim's videotaped statement was not conducted in accordance with the provisions of La.R.S. 15:440.4, the information obtained from the video session is also tainted and unreliable.
La.R.S. 15:440.4 states that:
A. A videotape of a child fourteen years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:
. . . .
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
*585 At trial, Ms. Waters admitted that during the taping of the video, the victim's mother was present in the room. Thus, the trial court excluded the video from being admitted into evidence. However, Ms. Waters testified as to what the victim told her at their initial meeting as well as what was discussed during the videotaped session. The defendant contends that any evidence purported to come from her was hearsay. The defendant claims that "[b]ased on this hearsay evidence, the social worker, Debra Waters, was allowed to use this incompetent evidence to further the credibility of the witness, [J.S.]." The defendant claims the use of the hearsay evidence violates La.Code Evid. art. 801(D)(1)(d), in that only the initial complaint by the victim is considered nonhearsay.
When the defendant raised his objection to Ms. Waters' testimony at trial, the court dealt with the objection as follows:
THE COURT: I'm going to allow it to go forward under article 801(D)(1)(b) as in boy. Your objection is overruled.
MR. DOWDEN: Your Honor, if we assume for the sake of this objection that this information was ascertained during the taping process, then we are allowing her to still gut title 15:440 et seq., in that she is now stating hearsay that is not otherwise admissible under your prior ruling. And I just simply don't thing [sic] that that's proper and I want to make sure that I adequately address that for the record.
THE COURT: Well, let me just go ahead and make the record clear. I made that ruling pertaining to the video tape. This specific article 15:440.4 and.5 was the article that I was noting regarding the video tape. Now, we're on a completely different subject. We have a witness testifying regarding a consistent statement made by the victim under article 801(D)(1)(b). So, therefore, your objection is noted and overruled. Thank you, sir.
La.Code Evid. art. 801(D)(1)(b) provides:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
. . . .
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]
We find that Ms. Waters' testimony was not hearsay and was properly admitted into evidence. Her testimony was presented after J.S. testified about the alleged rape and was subjected to cross-examination. Ms. Waters' testimony regarding the victim's prior consistent statement was offered expressly to rebut the defense's implied charge that J.S. fabricated her version of the incident. Therefore, Ms. Waters' testimony is not hearsay. We find no error in the trial court's ruling on this issue.

Excessiveness of Sentence
In his fourth assignment of error, the defendant claims his sentence is excessive. For the crime of attempted forcible rape, the trial court sentenced the defendant to serve twenty years at hard labor, ten years suspended, with one year to be served without benefit of probation, parole, or suspension of sentence. During the suspended portion of the sentence, the trial court ordered the defendant to serve five years supervised probation.
Article 1 § 20 of the Louisiana Constitution of 1974 mandates that, "[n]o law *586 shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment." This court has previously stated:
To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981), (quoting State v. Bonanno, 384 So.2d 355 (La.1980)); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
State v. Ethridge, 96-1050, pp. 3-4, (La. App. 3 Cir. 2/5/97); 688 So.2d 1274, 1275-1276.
At the sentencing hearing the trial court indicated that it had considered the defendant's statement, the victim information, his criminal history, social history and the sentencing guidelines of La.Code Crim.P. art. 894.1. The trial court heard from several character witnesses who testified in support of the defendant and offered pleas of leniency. Furthermore, the trial court noted that it ordered a presentence investigation report on the defendant and that it also relied on the report in imposing the sentence. Our review of the report reveals that the defendant was previously arrested for alleged crimes of simple assault, contributing to the delinquency of a juvenile, aggravated assault, simple battery, and simple rape. The last three charges involved the defendant's former wife, J.S.'s mother. However, the report indicates that the complaints were either dropped or the defendant was never formally charged with the offenses. Also noted in the PSI report was a complaint received from the defendant's previous employer, Valley Electric. The company claims that the defendant stole $11,434.54 from the company on June 7 and 8, 2000.
The sentencing range for forcible rape is "imprisonment at hard labor for not less than five nor more than forty years," with at least two years to be served without benefits. La.R.S. 14:42.1(B). Since the defendant was convicted of attempted forcible rape, he was subject to receive one-half of the maximum sentence for forcible rape. See La.R.S. 14:27. In this case, the trial court imposed the maximum term of imprisonment, twenty years at hard labor. However, it suspended ten years of the sentence. Moreover, the trial court ordered only the statutory minimum term of the sentence, one year, to be served without benefit of probation, parole, or suspension of sentence.
After review, we do not find that the sentence imposed shocks our sense of justice or that the punishment is grossly disproportionate to the severity of the crime committed. The sentence was within the statutory sentencing range for attempted forcible rape and we find no manifest abuse of the trial court's discretion in imposing this particular sentence.

Ineffective Assistance of Counsel
In his final assignment of error, the defendant claims his trial counsel was ineffective in various regards. He initially complains that counsel failed to give an opening statement and failed to call J.S.'s mother as a witness in the case. He claims the mother could have been cross-examined as to her daughter's story and could have explained why the child recanted *587 her story on four different occasions. Further, the defendant claims that due to the dysfunctional environment in which the victim was raised, a psychiatric evaluation should have been performed to determine her truthfulness in reporting the incident. Finally, the defendant claims that other letters written by the victim should have been placed into evidence.
In State v. Bright, 98-0398, pp. 40-41 (La.4/11/00); 776 So.2d 1134, 1157, the supreme court set forth the standard for reviewing such claims, in stating:
A criminal defendant is guaranteed the effective assistance of counsel. United States Sixth Amendment; La. Const. art. I, § 13; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Washington, 491 So.2d 1337 (La.1986). To establish a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, that counsel's professional errors resulted in prejudice to the extent that it undermined the functioning of the adversarial process and rendered the verdict suspect. Strickland v. Washington, supra; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). This does not mean "errorless counsel [or] counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance." State v. Ratcliff, 416 So.2d 528, 531 (La.1982).
A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal. E.g., State v. Prudholm, 446 So.2d 729 (La.1984). However, when the record is sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate. E.g., State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29, 32-35.
We find the defendant's allegations concerning the ineffectiveness of his trial counsel fall primarily within the scope of the defense counsel's trial strategy. Counsel's decision to not call a witness, introduce a piece of evidence, or seek a medical evaluation are issues which are not discoverable from a cold record on appeal. Thus, we conclude the claim is more appropriate for post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be ordered.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.