CLARENCE E. McMANUS, Judge.
 

 |?Defendant, James Perkins, appeals his convictions and sentences for sexual battery upon a juvenile and indecent behavior with a juvenile. For the following reasons, we affirm defendant’s convictions and sentences and remand this matter with instructions to correct an error patent.
 

 STATEMENT OF THE CASE
 

 On March 10, 2010, the Jefferson Parish District Attorney’s office charged the defendant, James Perkins, with one count of sexual battery upon a known juvenile (Count One) and one count of indecent behavior with a juvenile (Count Two), violations of LSA-R.S. 14:43.1 and LSA-R.S.
 
 *252
 
 14:81 respectively. The defendant pleaded not guilty at arraignment.
 

 On June 2, 2010, a jury trial was held in this matter. At the conclusion of the trial, the jury returned verdicts of guilty as charged as to Count One and Count |aTwo. The defendant filed a motion for a new trial, which the trial court denied immediately prior to sentencing on June 17, 2010. After the defendant waived sentencing delays, the trial court sentenced the defendant to a term of two years imprisonment “in the Department of Corrections” without benefit of parole, probation, or suspension of sentence on Count One. The trial court sentenced the defendant to a term of imprisonment of two years “in the Department of Corrections” on Count Two.
 

 The defendant filed a motion to reconsider sentence, which the trial court denied immediately. Defendant now appeals his convictions.
 

 FACTS
 

 B.H., the victim in this case, testified that she was 15 years old at the time of trial. B.H. testified that the defendant had lived with her and her mother, R.H., for about fourteen years and that she considered the defendant to be a father figure.
 

 While B.H. was on the witness stand, the State played a recording of a statement that she gave to Stacie Lansa of the Jefferson Children’s Advocacy Center (“CAC”) on December 9, 2009. In the recording, B.H., related several “incidents” that had occurred between her and the defendant, who she referred to as her “stepdad.” B.H. informed Ms. Lansa that the defendant “used to touch” her and that the defendant had touched her inappropriately on about five occasions. B.H. also noted that the defendant touched her on her chest and between her legs with his hands.
 

 B.H. indicated to Ms. Lansa that the first “incident” occurred when she was in the sixth grade and that she and her sister, B.P., were asleep in her mother’s bed. B.H. reported to Ms. Lansa that she awoke during the night to the defendant’s hand underneath her clothes and touching the outside of her vagina on the skin. B.H. did not do anything and eventually went back to sleep.
 

 |4In her recorded statement, B.H. recounted other instances where the defendant touched her or behaved in an inappropriate manner. B.H. recalled an incident where she had gotten out of the shower and was wearing a towel after leaving the bathroom. When she walked out of the bathroom, the defendant “grabbed the top of [the towel] and just pulled it off.” B.H. told Ms. Lansa that she was not wearing anything under the towel.
 

 B.H. additionally indicated to Ms. Lansa that the defendant pulled her shirt at the top and looked down her shirt a “few times” and that he would pull her shirt and let go.
 

 B.H. also recalled an incident where she and the defendant were on the couch watching television and “tickling” each other by poking each other in the sides. B.H. said that the defendant pushed her down on her side, then got on top of her, opened her legs, and started kissing her on her neck. B.H. responded by biting the defendant on his shoulder.
 

 B.H. estimated in the recorded statement that she was around 13 years old when the last incident occurred. B.H. indicated to Ms. Lansa that the first person that she told of these incidents was her boyfriend at the time.
 

 At that point, the statement ended and B.H. resumed her trial testimony. B.H. testified that she told her school counselor,
 
 *253
 
 Ms. Bose, that “something had happened between [her] and the defendant.” According to B.H., she told Ms. Bose what she believed to be the truth at the time, but she was not sure at trial that what she told Ms. Bose was entirely accurate. B.H. also admitted that she could not recall what she told Ms. Bose, nor could she recall when she talked to Ms. Bose. B.H. also indicated that she told her psychologist, Dr. Varnado, her mother, and teachers at her school what she believed to be the truth at the time.
 

 |fiB.H. repeatedly stressed at trial that she was uncomfortable testifying as to what had happened between her and the defendant. However, B.H. did acknowledge in her trial testimony that there were two “incidents” that took place between her and the defendant. The first incident occurred when B.H., R.H., and the defendant lived at 429 Avenue B in Marrero. B.H. indicated that the second incident occurred at 1745 Penny Street in Marrero. B.H. testified that she thought the first incident may have been a dream because “it happened in the middle of the night and I don’t know if I actually woke up or not.” However, she was awake for the second incident. B.H. acknowledged that she told Ms. Lansa “exactly what happened” during the recorded statement.
 

 On cross-examination, B.H. testified that she began having difficulties at school in 2010, at which time she began seeing Dr. Varnado. She also indicated that she did not think that the defendant sexually assaulted her in any way.
 

 On redirect, B.H. admitted that the “dream thing came up first only about ... a few months ago.” According to B.H., her mother found out that she had seen the school counselor when her mother began reading the text messages on her cell phone. The prosecutor then asked B.H. if she had been truthful in speaking with Ms. Bose, her school teachers, Ms. Evans, a child protection investigator, her mother, and the police officers. B.H. responded that she had been truthful to each of these individuals about the incident in the middle of the night. She also testified that she had testified to the truth under oath and thought the incident had happened when she told the story before, but now did not think it had happened.
 

 Sylvia Bose, B.H.’s school counselor, testified that she spoke with B.H. sometime in 2008. When Ms. Bose spoke to B.H., B.H. disclosed that her stepfather had sexually abused her in the past and that “she was having trouble | ^dealing with it.” Ms. Bose did not contact the authorities because “it was not an ongoing situation.”
 

 R.H. testified that she lived with the defendant for ten years and that they had one child together. According to R.H., in 2004, she was working nights at Wal-Mart while the defendant stayed home with the children. R.H. testified that B.H. would have been approximately 11 years old at the time.
 

 R.H. testified that she discovered the allegations of sexual abuse by reading a text message on her daughter’s cell phone. R.H. asked her about the text message, and B.H. told her “a part of it.” Ms. Bose called R.H. approximately one week later and told R.H. what B.H. had told her.
 

 R.H. testified that after speaking with Ms. Bose, she threw the defendant out of the house for approximately two weeks. She did not call the police or the Office of Community Services because “deep down inside [she] did not think that he did it.” R.H. testified that OCS informed the police of B.H.’s allegations. According to R.H., B.H. began seeing Dr. Varnado in 2008 because she was having anxiety attacks.
 

 
 *254
 
 On cross-examination, R.H. testified that in 2008, B.H. had a cell phone and often stayed up late talking on the phone and sending text messages. R.H. admitted that the defendant took B.H.’s phone away and that B.H. was “very mad” afterwards. This precipitated a fight, which occurred before R.H. spoke to Ms. Bose.
 

 Kay Evans, a child protection investigator with the Jefferson Parish Office of Community Services testified that in November of 2009, she investigated the allegation of sexual abuse relating to B.H. Ms. Evans responded to R.H.’s home and interviewed B.H. and R.H. She described B.H.’s demeanor as “somber” and indicated that R.H. was “not happy with [her] being there, but was as cooperative |7as she needed to be” for the investigation. R.H. told Ms. Evans that she did not report the alleged abuse to OCS because she did not want the defendant to be out of the home for financial reasons. According to Ms. Evans, B.H. recounted her story twice and was consistent both times.
 

 On cross-examination, Ms. Evans testified that she spoke to R.H. about the alleged abuse and that R.H. told her that she did not believe that abuse had occurred.
 

 Robert A. Varnado, a psychiatric mental health nurse practitioner, testified that he met with B.H. in November of 2009 for a psychiatric evaluation. B.H. reported to Dr. Varnado that she was anxious, had a loss of interest and stamina, was having trouble falling asleep, and was having thoughts of death. Dr. Varnado diagnosed B.H. as suffering from major depression at that time.
 

 Dr. Varnado met with B.H. several other times. Dr. Varnado testified that during their second visit, B.H. told him that she wanted to talk to him alone. B.H. proceeded to tell Dr. Varnado that her mother’s boyfriend had fondled her by touching her breast and vagina more than a year prior to the meeting. B.H. wanted Dr. Varnado to “do something about it.” Dr. Varnado prescribed Lexipro, a SSRI anti-depressant drug, to treat B.H.’s depression. He also “started the process of trying to notify child protection.”
 

 The defendant testified that he had never touched B.H. in a sexual manner. The defendant maintained that the sexual assault allegations resulted from arguments over B.H.’s use of her phone and wanting to date. The defendant claimed that the victim was “occasionally” vindictive, and he contended that she would make up an allegation of sexual abuse in order “to be on the phone with her boyfriend.”
 

 \ ASSIGNMENT OF ERROR NUMBER ONE
 

 In his sole assignment of error, the defendant contends that the evidence presented by the State at trial was insufficient to sustain convictions for sexual battery upon a known juvenile and indecent behavior with a juvenile. He contends that the evidence used to convict him was insufficient because B.H. “recanted” the testimony she gave during the CAC interview and “denied her allegations no less than 26 times during the trial.”
 

 The State disputes that B.H. “recanted” her testimony. The State argues the victim consistently maintained that she told the truth at the time of all of her previous statements. The state maintains that the minor victim’s reluctance to testify and recently developed willingness to consider part of the charged conduct to possibly be a “dream” did not stem from a lack of accuracy or candor as to her earlier reports of sexual abuse. Rather, as her testimony evidenced, B.H. was a conflicted young teenager at the time of trial who had suffered sexual abuse by a loved one
 
 *255
 
 and was subject to the pressures placed upon her by such a situation. The State contends that the jury chose to credit B.H.’s earlier testimony rather than that of the defendant.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 

 The defendant was convicted of sexual battery upon a known juvenile, a violation of LSA-R.S. 14:43.1. At the time of the offenses, LSA-R.S. 14:43.1(A) pertinently defined sexual battery as the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of |9the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained 15 years of age and is at least three years younger than the offender.
 

 The defendant was also convicted of indecent behavior with a juvenile, defined as, in pertinent part:
 

 A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person;
 

 (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense;
 

 LSA-R.S. 14:81.
 

 Accordingly, to convict a defendant of indecent behavior with a juvenile, the State must prove that (1) the defendant was over the age of seventeen and more than two years older than the victim, who was not yet seventeen; (2) the defendant committed a lewd or lascivious act upon the person or in the presence of a child; and (3) that the defendant intended to arouse or gratify either his own or the victim’s sexual desires.
 
 State v. Schenck,
 
 518 So.2d 1159, 1165 (La.1987).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier-of-fact, is sufficient support for a requisite factual conclusion.
 
 State v. Turner,
 
 05-75 (La.App. 5 Cir.5/31/05), 904 So.2d 816, 823,
 
 writ denied,
 
 2005-2591 (La.5/26/06), 930 So.2d 20. With sexual offenses, the victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.
 
 State v. Hotoph,
 
 99-243 (La.App. 5 Cir.11/10/99), 750 So.2d 1036, 1045,
 
 writs
 
 denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066.
 

 The defendant contends that B.H.’s testimony was not reliable and that the jury erred in giving it more weight than that of the defendant. In
 
 State v. Johnson,
 
 97-1519 (La.App. 4 Cir. 1/27/99), 726 So.2d 1126,
 
 writ denied,
 
 99-0646 (La.8/25/99), 747 So.2d 56, the defendant was charged with raping his daughter, C.G. C.G.’s mother testified that while doing laundry she noticed stains on C.G.’s underwear. Later C.G. complained of burning in her genital area, and her mother took her to Charity Hospital for a physical exam and tests, where she tested positive for gonorrhea.
 
 Id.
 
 at 1128-29.
 

 
 *256
 
 At trial, C.G. testified: “I had a dream — I don’t know if it’s a dream or it’s not a dream. He had on a black like a ninja outfit, and he came in [her sister’s bedroom], and he climbed on top of me.”
 
 Id.
 
 at 1129. C.G. said she did not tell anyone about the “dream” until she went to the hospital, where she told her mother.
 
 Id.
 
 at 1130.
 

 On appeal, the defendant argued the evidence was insufficient to convict of aggravated rape of C.G. because C.G. testified that she did not know whether “it’s a dream or it’s not a dream.”
 
 Id.
 
 at 1132. The Fourth Circuit disagreed, holding that “the evidence in the light most favorable to the prosecution ... was sufficient to convict of the aggravated rape of C.G.”
 
 Id.
 

 In
 
 State v. Holley,
 
 01-0254 (La.App. 3 Cir. 10/3/01), 799 So.2d 578, the victim testified that the incident occurred when she accompanied the defendant to look at some calves to purchase. She claimed that, on the way to look at the calves, the defendant raped her.
 
 Id.
 
 at 581-82. In support of the victim’s testimony, the State presented evidence from a social worker with OCS and the |nvictim’s babysitter, both of whom testified that the victim told them that the defendant raped her.
 
 Id.
 
 at 582.
 

 In an attempt to discredit the victim’s testimony, the defendant presented evidence that the victim recanted her story of the alleged rape on several occasions. The defendant introduced the testimony of several witnesses who heard the victim state that the rape incident did not happen.
 
 Id.
 
 The defendant also testified on his own behalf.
 

 On appeal, the Third Circuit held that the evidence was sufficient to support a conviction for attempted forcible rape, reasoning:
 

 Here, the trial judge, as the trier of fact, was presented with the contradictory testimony of the victim and the defendant regarding the events of March 23, 1996. Ultimately, the trial judge chose to accept [the victim’s] version of events, finding the defendant guilty of attempted forcible rape. As stated previously, it is the primary function of the factfin-der to weigh the respective credibility of each witness, and the resulting credibility determinations should not be second-guessed on appeal beyond the sufficiency evaluations under the
 
 Jackson
 
 standard of review.
 

 Therefore, after viewing the facts of this case in the light most favorable to the State, we find no clear error in the trial judge’s decision to credit [the victim’s] testimony or in the determination that the State carried its burden of proving the essential elements of attempted forcible rape. This assignment of error is without merit.
 

 Id.
 
 at 583 (citations omitted).
 

 In this case, the jury was confronted with conflicting testimony offered by defendant and various witnesses for the State. The defendant testified that he never touched B.H. inappropriately. B.H. testified in her statement to Ms. Lansa that the defendant had rubbed the outside of her vagina with his hand on several occasions. B.H. also testified in her statement to Ms. Lansa that the defendant held her down and began kissing her in a romantic way on another occasion. Dr. Var-nado testified that B.H. told him that the defendant had touched her breast and | |2vagina inappropriately. Ms. Bose testified that B.H. told her that she was suffering from “some past abuse issues.”
 

 The defendant denied that he touched B.H. inappropriately. He contends that B.H.’s trial testimony is not credible because she “recanted” the story she told in the recorded statement with Ms. Lansa.
 
 *257
 
 However, B.H. did not testify that the previous statement that she gave to Ms. Lansa was not true. B.H.’s trial testimony indicates that she told Ms. Lansa, Ms. Bose, and Ms. Evans the truth, as she perceived it to be at the time. B.H.’s trial testimony further indicates that she now believes that the events she described to Ms. Lansa may not have occurred and that she may have merely “dreamed” that they occurred.
 

 Evidently, the jury chose to believe the recorded statement and the State’s other witnesses. It is manifest that the trier-of-fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Singleton,
 
 05-622 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 651. It is not the function of the appellate court to assess the credibility determinations of the trier-of-fact or to re-weigh the evidence.
 
 Id.
 

 Therefore, we find that, viewing the evidence in a light most favorable to the State, the evidence presented was sufficient to convict the defendant of sexual battery upon a known juvenile and indecent behavior with a juvenile. B.H. indicated that the defendant touched and rubbed her vagina with his hand. Such is sufficient to sustain a conviction for sexual battery. B.H. also indicated that the defendant held her down and kissed her on her neck, which is sufficient to sustain a conviction of indecent behavior with a juvenile. Accordingly, we find that the evidence presented on both counts was sufficient and that this assignment of error has no merit.
 

 \ rJERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review notes one error patent for correction.
 

 There are two discrepancies between the commitment and the transcript, to wit:
 

 (1) The transcript indicates that the defendant was sentenced to terms of imprisonment “in the Department of Corrections.” The commitment indicates that the defendant was sentenced to terms of imprisonment at hard labor.
 

 (2) The commitment indicates that the trial court informed the defendant of his Boykin rights and that the defendant executed a waiver of rights form. The transcript does not reflect either.
 

 The transcript prevails when there is a discrepancy between the commitment and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Therefore, we remand this matter to the trial court with instructions to amend and correct the commitment to conform to the transcript.
 

 Accordingly, defendant’s convictions of sexual battery upon a known juvenile and indecent behavior with a juvenile, as well as his sentences, are affirmed. This matter is remanded for corrections, as noted in the error patent review above.
 

 CONVICTIONS AND SENTENCES AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS