STATE OF LOUISIANA

VERSUS

DALTON PAUL BREAUX, III

NO. 22-KA-535

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-5054, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING


April 26, 2023


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Robert A. Chaisson, and John J. Molaison, Jr.


**AFFIRMED AND REMANDED**
   **RAC**
   **SMC**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
  Honorable Paul D. Connick, Jr.
  Thomas J. Butler
  Anne M. Wallis
  Zachary P. Popovich
  Tucker Wimberly

COUNSEL FOR DEFENDANT/APPELLANT,
DALTON PAUL BREAUX, III
  Prentice L. White

**CHAISSON, J.**

In this appeal, defendant, Dalton Paul Breaux, III, challenges his enhanced thirty-year sentence as excessive. Having found no merit to the arguments presented by defendant in his appellate brief, we affirm defendant's convictions and sentences. However, we remand the matter for correction of errors patent as noted herein.

## PROCEDURAL HISTORY

On September 26, 2019, the Jefferson Parish District Attorney filed a bill of information charging defendant with second degree rape, in violation of La. R.S. 14:42.1 (count one), and unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:62.3 (count two).[1] Defendant pled not guilty at his arraignment.

On March 8, 2022, defendant proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury, on March 10, 2022, unanimously found defendant guilty of the responsive verdicts of third degree rape, in violation of La. R.S. 14:43, and attempted unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:27 and La. R.S. 14:62.3. Defendant filed an oral motion for new trial, which was denied by the trial court.

On April 13, 2022, after considering the victim impact statement, the trial court sentenced defendant to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the third degree rape conviction (count one) and to two years imprisonment at hard labor on the attempted unauthorized entry conviction (count two), with the sentences to run concurrently with each other. With regard to count one, the State filed a bill of information pursuant to the provisions of La. R.S. 15:529.1, alleging that defendant was a second felony offender. On May 11, 2022, after being advised of his rights,

---

[1] On March 8, 2022, the bill of information was amended to reflect the correct date of the offenses.

defendant stipulated to being a second felony offender. The trial court then vacated defendant's original sentence on count one and resentenced him to thirty years imprisonment at hard labor without benefit of probation or suspension of sentence. Defendant filed a motion to reconsider sentence, which the trial court heard and denied on August 1, 2022.

Defendant now appeals and assigns, as his sole assignment of error, that his enhanced sentence of thirty years is excessive.

## **FACTS**

The victim, D.F.,[2] and defendant are cousins by marriage. According to D.F., the two were close growing up and even worked together at her father's company. Although they lost contact for several years, the two later reconnected, and between April and June of 2019, they communicated about D.F. wanting to buy Adderall from defendant.

At trial, D.F. testified that on the morning of June 25, 2019, she was asleep in the bedroom of her Marrero residence and was awakened at approximately 9:30 a.m. because her dog kept barking. D.F. heard noises coming from her bathroom, and when she looked in that direction, she made eye contact with defendant in her bathroom mirror. She observed defendant holding a hammer in his hand, which she recognized as the hammer she used to secure her broken bathroom window.

Defendant proceeded into her bedroom, dropped the hammer, and started walking towards D.F. while saying, "Why would you do that to me? Why would you send me to jail?" D.F. was scared and tried to run away from defendant. However, he grabbed her, threw her on the bed, held her down, and said, "Give me

---

[2] Herein, the victim will be identified by initials in accordance with La. R.S. 46:1844(W), which allows the Court to protect the identity of a crime victim who is a minor, a victim of a sex offense, or a victim of a human trafficking related offense by using his or her initials. *State v. Diaz*, 20-381 (La. App. 5 Cir. 11/17/21), 331 So.3d 500, 507 n.7, *writ denied*, 21-1967 (La. 4/5/22), 335 So.3d 836.

what you know that I want." According to D.F., she tried to escape again, but defendant grabbed her arms and pushed her back onto the bed. D.F. tried to fight defendant off by kicking, pushing, yelling, and begging him to stop; however, she was unsuccessful in these attempts. D.F. relayed that defendant placed her on her knees with her head down onto the bed. As defendant held her down, D.F. continued screaming. At this point, defendant put "some sort of towel" around her mouth and threatened to kill her if she continued to yell. According to D.F., defendant positioned himself behind her and took off all his clothes while holding her down. D.F. testified that first he stuck his fingers in her, made a few nasty comments, and then penetrated her vagina with his penis.

After defendant stopped, he told D.F. to get her purse and give him any credit cards or cash that she had. She went to the kitchen to retrieve her purse, which was next to her knife set, and tossed defendant her wallet and some cash in order to distract him. D.F. grabbed a butcher knife and told defendant, "If you don't leave, I'm going to stab you or just scream rape[.]" She testified that defendant quickly put on his pants and ran out her front door. D.F. immediately called her mother to tell her what had happened and then called 9-1-1. At trial, D.F. testified that she did not give defendant permission to be in her house that day and did not consent to the sexual encounter.

Detective Grant Holley of the Jefferson Parish Sheriff's Officer was the first officer to arrive on the scene. Upon his arrival, he spoke to the victim, who was distraught and crying. D.F. informed the officer of what had occurred and took him through the house, showing him items that were relevant to the investigation. Shortly thereafter, other detectives assigned to the personal violence section of the Jefferson Parish Sheriff's Office arrived on the scene. Detective Patrick Fonte, the lead detective, and Detective Biana Robinson both described the victim as upset, crying, and visibly shaken. After D.F. gave these officers a brief statement of what

had occurred, Detective Robinson transported D.F. to the hospital for a forensic medical examination.[3]  In addition, Detective Robinson conducted a recorded interview with D.F. at the hospital to get a detailed account of the incident.  D.F. also identified a photograph of defendant as the individual who broke into her home and molested her.  Based on the information obtained during the course of the police investigation, defendant was arrested on June 26, 2019.

At trial, defendant presented a different version of events.  Defendant admitted being at D.F.'s house on June 25, 2019, and acknowledged that he engaged in sex with D.F., his cousin through marriage; however, he maintained that the sexual encounter was consensual and initiated by D.F.  According to defendant, on the morning of June 25, 2019, he walked to D.F.'s house to bring her Adderall and Ecstasy that she had arranged to purchase from him.  When D.F. ultimately answered the back door, she told him to follow her into the bedroom.  Defendant gave D.F. the pills, and in return, she handed defendant the money.  Realizing that D.F. shorted him two hundred dollars, defendant asked her, "Where's all the money?"  According to defendant, D.F. then crawled on her hands and knees on the bed, pulled her nightgown up to the mid-section of her back, and looked at him.  Defendant indicated that he took this as a sexual offer by D.F., and they proceeded to have sex for a few minutes.

When they were finished, D.F. went into the bathroom, at which point defendant looked through D.F.'s purse and discovered she had enough money to pay for the drugs.  When confronted with this, D.F. claimed this money was for "something else" and refused to return the drugs to defendant.  According to defendant, D.F. then tried to take the money out of his hands.  As they argued over

---

[3] Elizabeth Serpas, an expert in the field of forensic nursing, testified at trial that she conducted the medical examination of the victim upon her arrival at the hospital.  During her testimony and in her written report, Ms. Serpas noted the injuries she observed on D.F. during the medical examination.  At trial, Ms. Serpas testified that the documented injuries were consistent with D.F.'s recitation of what happened to her.

the money, D.F. threatened to call the police and report that he broke into her house and robbed her if he did not give the money back. Defendant replied that he would inform D.F.'s father that they had sex, and she was purchasing drugs again. D.F. screamed at him to get out of her house and again threatened to call the police and report that he broke into her house. Defendant explained that since he was a convicted felon, he took off running and immediately went to hide the drugs in the street to be picked up later.

## EXCESSIVE SENTENCE

In his sole assignment of error on appeal, defendant argues that his thirty-year enhanced sentence for his third degree rape conviction is unconstitutionally excessive. He contends that this sentence is grossly disproportionate to the offense and that the trial court erred in denying his motion to reconsider sentence in light of the evidence presented that similarly situated defendants have received sentences below thirty years for more egregious sexual conduct.

In response, the State maintains that defendant stipulated to the allegations in the multiple bill in exchange for an agreed upon sentence of thirty years, and therefore, defendant cannot appeal or seek review of his sentence under La. C.Cr.P. art. 881.2(A).

On May 11, 2022, the trial court conducted a hearing on the multiple offender bill of information. After defendant indicated that he wanted to stipulate to being a second felony offender, the trial court advised defendant of his rights and the consequences of his guilty plea. In addition, the trial court advised defendant of his sentencing exposure as a second felony offender, as well as the actual sentence that would be imposed upon acceptance of his stipulation to the multiple offender bill of information. Specifically, the trial court advised defendant as follows:

But if you are convicted as a second felony offender, you face a minimum sentence of 8.33 years up to a maximum sentence of 50 years, because it's double the max and 1/3 of the minimum. What I have indicated is that if you stipulated and pled guilty, I would guarantee your sentence would be 30 years as a second felony offender. So do you want to plead guilty as a second felony offender with that sentence, or not?

Defendant replied, "I want to plead guilty." Defendant also acknowledged that he signed the waiver of rights form, in which he was again advised of his possible sentencing exposure as well as the sentence of thirty years that would be imposed upon acceptance of his stipulation. At the conclusion of the colloquy, the trial court accepted defendant's stipulation as knowingly, intelligently, freely, and voluntarily made. Thereafter, the trial court vacated the original sentence on count one and resentenced defendant under the multiple bill statute to imprisonment at hard labor for thirty years without benefit of probation or suspension of sentence.

On May 12, 2022, defense counsel filed a motion to reconsider sentence, alleging that defendant's sentence is excessive and grossly disproportionate to the offense. To support his request for reconsideration of sentence, defense counsel pointed out that defendant has no history of sexual offenses and also presented cases in which other defendants have received similar or lesser sentences for more egregious sexual conduct.

After a hearing on August 1, 2022, the trial court denied defendant's motion to reconsider sentence, noting that it reviewed defendant's motion and that the cases cited by defendant did not involve multiple offender proceedings and included different facts. The judge then stated in part:

> The reality is, the Court sat through the testimony in this particular case, heard the testimony of the victim, heard the testimony of [defendant]. The jury obviously rejected [defendant's] version of how this took place. Quite honestly, it did not seem plausible to the Court either.
>
> With respect to the length of the sentence, I would point out that a third degree rape charge carries a maximum sentence of 25

years. With a multiple offender being convicted as a second felony offender -- it was second, right -- as a second felony offender, that would increase the maximum to 50 years. [Defendant's] sentence of 30 years is well within that statutory range. There's clearly discretion to be exercised by the Court in this particular matter. Certainly, other judges may have seen it differently and may have sentenced [defendant] to less or more. I believe that based upon all the facts that the Court heard during the course of trial, based upon all the information that the Court received about [defendant], his record, the ultimate conviction and the multiple offender proceeding, that that was the correct sentence. So, accordingly, the motion is denied.

Defendant now contends that the trial court erred in denying his motion to reconsider sentence based on the "overwhelming evidence" presented by defense counsel that similarly situated defendants have received sentences below thirty years for more egregious sexual conduct.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Alvarez*, 08-558 (La. App. 5 Cir. 8/31/10), 47 So.3d 1018, 1022.

In the instant case, defendant's enhanced sentence of thirty years imprisonment at hard labor without benefit of probation or suspension of sentence was imposed pursuant to, and in conformity with, a plea agreement. Under La. C.Cr.P. art. 881.2(A)(2), a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This Court has consistently recognized that Article 881.2 precludes a defendant from seeking review of an enhanced sentence to which the defendant agreed prior to stipulating to the multiple bill. *State v. Stalling*, 19-336 (La. App. 5 Cir. 1/29/20), 290 So.3d 332, 343, *writ denied*, 20-326 (La. 7/24/20),

299 So.3d 76. Accordingly, because defendant received a sentence imposed in conformity with a plea agreement that was set forth at the time of the plea, he is precluded from challenging his multiple offender sentence as excessive.

<u>**ERRORS PATENT REVIEW**</u>

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review of the record reflects the following errors that require corrective action.

First, the trial court failed to inform defendant of the sex offender registration requirements in accordance with La. R.S. 15:540, *et seq*. Defendant's conviction of third degree rape, in violation of La. R.S. 14:43, is defined as a sex offense under La. R.S. 15:541(24). La. R.S. 15:542 outlines the mandatory registration requirements for sex offenders. La. R.S. 15:543(A) requires the trial court to notify a defendant charged with a sex offense in writing of the registration requirements of La. R.S. 15:542.

Accordingly, we remand this case with instructions to the trial court to inform defendant of the registration requirements for sex offenders by sending appropriate written notice to defendant within ten days of this opinion and to file written proof in the record that defendant received such notice. *State v. Baskin*, 15-704 (La. App. 5 Cir. 3/30/16), 188 So.3d 470, 475, *writ denied*, 16-833 (La. 4/24/17), 220 So.3d 741. In addition, we direct the trial court to correct the appropriate Uniform Sentencing Commitment Orders (UCOs)[4] to reflect that defendant shall comply with the sex offender registration requirements. *See State v. Chinchilla*, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1199, *writ denied*,

---

[4] At the outset, we recognize that there are several versions of the UCOs contained in the record. For purposes of this errors patent review, we are referencing the latest original UCO that is signed by the trial court and dated May 13, 2022, and the multiple offender UCO that is signed by the trial court and dated May 11, 2022.

21-274 (La. 4/27/21), 314 So.3d 838, *cert. denied*, -- U.S. --, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021).

Next, the record reflects that while the trial court imposed defendant's multiple offender sentence without benefit of probation or suspension of sentence, it failed to impose a parole restriction as required by the penalty provision of the underlying offense. *See* La. R.S. 14:43(B); *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280. When a trial court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. *See State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, 799. Even though the parole restriction is self-activating, and to ensure accuracy in the record, we remand the matter to the trial court to correct the multiple offender sentencing minute entry and the multiple offender UCO to reflect that defendant's thirty-year enhanced sentence is to be served without benefit of parole, probation, or suspension of sentence. *See State v. Bardell*, 17-274 (La. App. 5 Cir. 11/15/17), 232 So.3d 82, 89-90.

In addition, we note an inaccuracy in the original UCO contained in the record with regard to the charged offenses. With regard to the original UCO dated May 13, 2022, the charged offenses are reflected as third degree rape, in violation of 14:43, and attempted unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:27 and La. R.S. 14:62.3. However, the record reflects that defendant was charged with second degree rape, in violation of La. R.S. 14:42.1 (count one), and unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:62.3 (count two). To correct this inaccuracy, we remand the matter to the trial court with instructions to correct the original UCO to reflect the proper charges, as well as the guilty verdicts to the lesser included offenses of third degree rape and attempted unauthorized entry of an inhabited dwelling.

22-KA-535                                9

Subsequent to the completion of these corrections, we direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCOs to the appropriate authorities and the Department of Corrections' legal department. *See State v. Doucet*, 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598, 609, *writs denied*, 18-77 (La. 10/8/18), 253 So.3d 789, and 18-196 (La. 11/5/18), 255 So.3d 1052, *cert. denied*, -- U.S. --, 139 S.Ct. 2676, 204 L.Ed.2d 1079 (2019).

Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences; however, we remand the matter for correction of errors patent as noted herein.

**AFFIRMED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 26, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-535

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          PRENTICE L. WHITE (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
STEPHEN T. WIMBERLY (APPELLEE)
DISTRICT ATTORNEY
ZACHARY P. POPOVICH (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053