STATE OF LOUISIANA

VERSUS

MAHLON R. NORTON, III

NO. 23-KA-262

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-1075, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING


December 27, 2023


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.


**AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM
COMMITMENT ORDER AND SENTENCING MINUTE ENTRY**
        **JGG**
        **SMC**
        **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
  Honorable Paul D. Connick, Jr.
  Thomas J. Butler
  Andrea F. Long
  Matthew Whitworth
  Blaine B. Moncrief

COUNSEL FOR DEFENDANT/APPELLANT,
MAHLON NORTON
  James A. Williams
  Kathrine E. Ellis

**GRAVOIS, J.**

Defendant, Mahlon R. Norton, III, appeals his convictions and sentences for one count of sexual battery of a juvenile under the age of thirteen in violation of La. R.S. 14:43.1, and one count of indecent behavior with a juvenile in violation of La. R.S. 14:81. Defendant was sentenced to forty years imprisonment with the Department of Corrections on the sexual battery conviction, and ten years imprisonment with the Department of Corrections on the indecent behavior conviction, to be served consecutively.

On appeal, defendant argues four assignments of error:

1) The trial court erred in not allowing defendant the counsel of his choice;

2) The evidence at trial was insufficient to support the guilty verdicts;

3) The trial court erred in not allowing defense counsel to question the victim and her mother regarding the victim's past mental health issues, thus inhibiting defendant's ability to present a defense; and

4) Defendant's sentences on the two counts were ordered to be served consecutively, which is an excessive sentence and violates defendant's Eighth Amendment right against cruel and unusual punishment.

For the following reasons, we affirm defendant's convictions and sentences. We further remand the matter for correction of the Uniform Commitment Order and the sentencing minute entry, as noted below in our Errors Patent Review.

## PROCEDURAL HISTORY

On April 29, 2022, the Jefferson Parish District Attorney filed a bill of information charging defendant, Mahlon R. Norton, III, with one count of sexual battery of a child under the age of thirteen, in violation of La. R.S. 14:43.1, on or between January 19, 2020 and September 1, 2020 (count one), and one count of indecent behavior with a juvenile under the age of thirteen, in violation of La. R.S. 14:81, on or between January 19, 2020 and January 4, 2021 (count two).[1] Defendant was arraigned on June 14, 2022 and pled not guilty.

---

[1] On January 10, 2023, the State amended the section located at the bottom of the bill of information to correct the description of count two to "Indecent Behavior With A Juvenile Under

The case proceeded to trial by jury on January 30, 2023. On February 1, 2023, the twelve-person jury returned a unanimous verdict of guilty as charged on each count. On February 9, 2023, as to count one, the trial court sentenced defendant to forty years imprisonment with the Department of Corrections, with the first twenty-five years to be served without the benefit of parole, probation, or suspension of sentence. On count two, the trial court sentenced defendant to ten years imprisonment with the Department of Corrections, with the first two years to be served without the benefit of parole, probation, or suspension of sentence. The court ordered that defendant's sentences for counts one and two be served consecutively to each other and all other sentences which defendant may be serving. The court ordered defendant to register as a sex offender for the remainder of his life.[2] The defense noted its objection to the sentences.

On February 27, 2023, the defense filed a Motion to Reconsider Sentence and a Motion for Appeal. On March 2, 2023, the trial court held a hearing on the defense's Motion to Reconsider Sentence, and the court denied the motion on that same date. The defense objected to the court's ruling. The trial court then granted the defense's Motion for Appeal. This appeal followed.

## FACTS

Defendant was accused of the aforementioned sex offenses against K.N.,[3] his daughter, who was a minor under the age of thirteen at the time of the offenses.

K.N. testified that she was currently in the eighth grade at John Quincy Adams Middle School. She testified that she was in the fifth grade when the

---

Thirteen" and the revised statute to "14:81." The bill of information previously provided the description of count two as "Molestation of A Juvenile Under Thirteen" and listed the corresponding revised statute as "14:81.2."

[2] Notification of Sex Offender documents were given to defendant. The court waived "fines, fees and court costs."

[3] In the interest of protecting the minor crime victim of sexual offenses as set forth in La. R.S. 46:1844(W)(3), we will use only initials to identify the victim or minor witnesses whose names can lead to the victim's identity. *See State v. E.J.M.*, *III*, 12-774, 12-732 (La. App. 5 Cir. 5/23/13), 119 So.3d 648, 652 n.1. *See also* Uniform Rules–Courts of Appeal, Rules 5-2.

offenses in question occurred. During her fifth-grade year, when the COVID pandemic happened, she attended Green Park Elementary School. Students were told that home quarantine would last two weeks, but she never returned to Green Park. On New Year's Eve of 2020, she was at her mother's friend's house with her friend, L.C.,[4] and others. She testified that she told L.C. that her dad might have "touched" her. L.C. told her that she had to tell someone and to call the police or tell her mom the next day.

When school resumed, K.N. told her science teacher, Ms. Monique Baptiste, what had happened to her. Ms. Baptiste took K.N. to see the school counselor, Ms. Katherine Campos. After K.N. spoke to Ms. Campos, Child Protective Services ("CPS") and a detective arrived at her school. She gave a separate interview to them in a room with Ms. Campos, and when her mother and grandmother arrived, she gave a report to a police officer.

K.N. testified that she had another interview at a "little house" on the Westbank where she told a "lady" what had happened to her. She was then examined at the hospital. She explained to the "lady" that around May 2020, her father asked her to put lotion on him. She said this was not weird because he had asked her to do this before, and it was "normal stuff" like rubbing his arms, legs, chest, and back. She explained that this time when she was rubbing around his stomach area, he asked her to go down his leg and asked her to go up. She said it was "back and forth with that." She explained that she got around his "pubic hair area," and he told her to "go to the side" and explained he wanted her to do more, "basically telling me to rub lotion on his penis." She testified that she started crying and was going to leave the room. He then told her that if she rubbed lotion

---

[4] The initials L.C. will be used for purposes of this opinion because L.C. testified at trial and was a juvenile at that time. *See State v. Hayman*, 20-323 (La. App. 5 Cir. 4/28/21), 347 So.3d 1030, 1034 ("Initials are used to protect the identity of juveniles at the time of trial who testified as witnesses for the State in this case.")

on him, he would unlock the Xbox for her. She explained that there was a passcode on the Xbox, and she was "punished" from using the Xbox at that time. She testified that she was playing the Xbox when her grandmother tried to open the door, but it was locked. Her father asked her to open the door, and her grandmother told her that it was time to go to bed.[5] She explained that this was the "first time."[6]

K.N. testified that the second time her father asked her to do the same thing was so that she could use the Xbox. She rubbed lotion on his arms, stomach, back, and legs. He asked her if he could rub lotion on her. She said no at first, but he "kind of" begged her, and she eventually said yes. He started to rub lotion on her arms, legs, and back. He asked her if he could rub lotion around her breasts, and she said no. He "pursued" her to say yes, so she did. She explained that her shirt was off because he was rubbing her back and stomach, and he was rubbing her breasts with lotion and groping them, under her bra. He wanted to rub around her vagina, but she said no. He told her to unbutton the three buttons on her shorts. She stated, "he did that, and he was rubbing down there. He was touching me down there." She testified that he stuck his hand underneath her underwear, and he rubbed the lotion all over her vagina. He then told her to rub lotion around his penis. He took his penis out of his underwear and she rubbed the lotion on the side. He then told her to grab it, and she said "no."

K.N. testified that she ran out of lotion, and she got another bottle from the bathroom that was a peach Bath & Body Works lotion. He let her play the Xbox, and then her grandmother knocked on the door. He made her open the door, and

---

[5] K.N. testified that her father wore only his underwear. She testified that he started with his clothes on, and as she moved to different body parts, he started taking his clothes off.

[6] The State asked K.N. to draw a picture of her father's bedroom. She did and positioned the bed, dresser, nightstand, and T.V. The drawing was admitted as State's Exhibit 6. She explained that her father told her to lock the door after he asked her to rub lotion on him.

she was told it was time to go to bed. She explained that both incidents happened in her father's room while the door was locked. She testified that both times he was lying on his back. She testified that she felt very uncomfortable when her father touched her. She identified defendant in court as her father. She testified that she identified a picture of her father that the detectives showed her. She stated that she told the truth about what her father had done to her when she reported it.

K.N. testified that although she spent a lot of time at her grandmother's house, she wanted to stay with her mother. She explained that she did not get to spend time with her mother because her mother would only pick her up from her grandmother's house after she got off of work, and she would only sleep at her mother's house. When she reported the incidents about her father's abuse, K.N. told her counselor that she felt like her mother did not want anything to do with her. She explained that she had had these feelings for a while, since approximately 2019, and that it made her feel sad. When asked if this sadness ever made her feel like harming herself, K.N. answered that she had had thoughts about it, but never did anything.

L.C. testified that she grew up with K.N. and that her dad was friends with her mom. She testified that she and K.N. had a three-to-four-year age difference. She explained that K.N. was best friends with her little sister, and K.N. was like another little sister to her. She stated that on New Year's Eve in 2020, she was at a party with her mother, her sister, a friend, K.N., and K.N.'s mother.[7] K.N was "acting out," and when they approached her about it, she said, "Maybe because my dad is touching me, and he makes me touch him." She told K.N. that when she went back to school, she needed to go to her counselor and tell what happened to her.

---

[7] L.C. testified that she was about fifteen or sixteen, and K.N. was about eleven when they were at the party on New Year's Eve.

Monique Baptiste testified that in the 2020-21 school year, right after the COVID quarantine, she was K.N.'s sixth grade science teacher at John Adams Middle School. On January 4, 2021, K.N. told her that she had a conversation with a family member about her father touching her inappropriately and that she needed to report it to someone. Ms. Baptiste testified that she took K.N. to the school counselor, Katherine Campos.

Katherine Campos testified that she was the counselor at John Adams Middle School. On January 4, 2021, K.N. came to her office with Ms. Baptiste. Ms. Baptiste informed her that K.N. needed to make a statement. Ms. Campos spoke to K.N. alone. K.N. told her that at her house "in the room," her father had asked her to put lotion all over him while he was naked. He asked her to take her clothes off, he put lotion all over her, and he touched her private parts. After K.N. told her this information, Ms. Campos called the police to report the abuse and called the Department of Children and Family Services ("DCFS").

Ms. Campos confirmed that she gave a statement on the same day to Detective Patrick Fonte.[8] K.N. told her that the incident with her father happened in May of 2020 when she was living with her grandmother and father. K.N. told her that her mother was living with her boyfriend at the time and that she felt like her mother did not want anything to do with her anymore. K.N. told her that she had not seen her mother lately other than "a very awkward Christmas."

Deputy Kisha Mann testified that she received a call for service in the beginning of January 2021 to John Quincy Adams Middle School for a complaint of a student that had been a victim of sexual battery. When she arrived at the

---

[8] Detective Patrick Fonte responded to a request for a "personal violence detective" at John Quincy Adams Middle School on January 4, 2021, in reference to a disclosure of sexual abuse by a student. He interviewed Ms. Baptiste and Ms. Campos. After the interviews, he made an appointment for K.N. at the Children's Advocacy Center for a forensic interview. He did not interview K.N. at the middle school. He testified that he worked the case with Detective Farrell, who was the lead detective on the case.

school, K.N. told her that she told her teacher that her father had touched her. K.N. explained that her father touched her and asked her to touch him in his bedroom in order for her to "gain access" to an Xbox game in his bedroom. He asked her to rub lotion on his arms and back, and he removed his boxers, which she was able to describe. She said she never touched his penis but touched close in his inner thighs. He kept asking her to move her hands up to his penis, and K.N. was "upset and nervous inside." Someone knocked at the door, and her father pulled the blanket over him. The knock was from her grandmother telling her to go to bed. Her father told her not to get the door right away because "he had to fix himself." K.N. told Deputy Mann there was another incident when he touched her "top private area" and her "bottom private area." Deputy Mann testified that this case stood out to her because K.N. was able to describe the room, the setting of the room, the location of the lotion, and the "pearberry" scent of the lotion that made her feel nauseous. K.N. looked Deputy Mann in her eyes and appeared upset and hurt. She told Deputy Mann, "I love my dad. I don't want this to happen to me again."[9] Deputy Mann stated that after detectives arrived at the school, she had no more involvement in the case.

Heather Latino testified that she was K.N.'s mother. Ms. Latino testified that defendant was the biological father of her daughter but they never married. Defendant and Ms. Latino did not have any type of court ordered custody agreement for K.N., but agreed that she would take K.N. during the week and defendant would have her on the weekends. On January 4, 2021, when K.N. was in the fifth grade, K.N.'s school counselor called her, informing her that she needed to go to the school to see her daughter and that the police were involved. Ms. Latino arrived at the school and met with the authorities and representatives

---

[9] Deputy Mann testified that K.N.'s statement was documented in an initial report.

from DCFS. K.N.'s grandmother was also at the school. During the time in question, K.N. lived with defendant part time on Rosebank Drive in Metairie. In 2020, "around quarantine time" defendant, along with K.N., lived with his two younger sisters, his niece, and his mother and father. Ms. Latino testified that around March to April of 2020, K.N. was living solely with defendant and her grandparents. She testified that K.N. currently lived with her and would sometimes stay with her grandparents.

Elizabeth Manasevit testified that she was formerly a forensic interviewer at the Jefferson Children's Advocacy Center.[10] On January 6, 2021, she conducted a forensic interview with K.N., and a DVD of the interview was made, which was played for the jury.

Defendant's father, Mahlon Robert Norton, Jr., testified that defendant had previously lived at his house for most of his life. Around May 2020, he, his wife, defendant, K.N., his two daughters, and another granddaughter were living at the house. K.N. was staying there approximately ninety percent of the time. He testified that defendant, Ms. Latino, and K.N. lived there on and off when K.N. was born. Later, defendant wanted to get away from his "situation" with Ms. Latino, and he and K.N. moved into their house. He described having a good relationship with his granddaughter, and described her as a little withdrawn. He testified that he did not notice any changes in K.N.'s demeanor while she was living at his house. He testified that defendant moved out of the house after these allegations were brought.

Defendant's sister, Tara Norton, testified that she lived with her mother, father, sister, and daughter. She testified that defendant previously lived at the

---

[10] Ms. Manasevit testified that a forensic interviewer conducts non-leading, non-suggestive interviews with children who had alleged abuse or witnessed a violent crime. She explained that in order for a child to get an appointment for a forensic interview, they had to be referred by law enforcement or DCFS. Other than taking K.N.'s interview, Ms. Manasevit did not take part in the investigation of the matter.

house. Defendant and K.N. lived at the house for most of K.N.'s childhood. She described K.N.'s demeanor as quiet, reserved, and shy. She testified that she was a "typical teenager." She testified that defendant and K.N. would play a lot of video games together in his bedroom. She explained that the door had a regular lock, and they could walk in at any time. When asked if she ever observed any inappropriate sexual behavior between defendant and K.N., she stated she had not. She testified that they were both "pretty awkward," they did not hug, and that K.N. was not very affectionate.

## ASSIGNMENT OF ERROR NUMBER TWO[11]

### *Sufficiency of the evidence*

On appeal, defendant argues that the evidence presented at the trial was insufficient to support the jury's verdict of guilty as to either count against him, and that the weight of the evidence in the instant case favors granting a new trial.[12] Defendant alleges that the State's case hinged on the testimony of K.N. and that her testimony cannot be afforded the weight necessary to convict him because the State offered no corroboration or evidence in support of K.N.'s claims. Defendant argues that K.N.'s testimony is not credible because none of the seven others who lived at the residence suspected abuse. Defendant also argues that K.N. waited almost a year to claim "two brief individual instances" and that it would seem if he were a sex offender, he would not "just stop after two incidents and never attempt

---

[11] When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine sufficiency of the evidence by considering all of the evidence. *State v. Strickland*, 04-843 (La. App. 5 Cir. 3/1/05), 900 So.2d 885, 889, *writ denied*, 05-0820 (La. 6/17/05), 904 So.2d 683, citing *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). Accordingly, we address defendant's second assignment of error first, because it involves sufficiency of the evidence.

[12] The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. In the instant matter, defendant did not file such a motion; however, the failure to file a motion for post-verdict judgment of acquittal does not preclude appellate review of sufficiency of the evidence. *See State v. Faciane*, 17-224 (La. App. 5 Cir. 11/15/17), 233 So.3d 195, 205, *writ denied*, 17-2069 (La. 10/8/18), 253 So.3d 797.

again over a period of six months." Defendant avers that the evidence at trial favored the defense's theory that K.N.'s allegations were more likely a cry for attention due to her mother's neglect.

The appropriate standard of review for determining sufficiency of the evidence was established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard for appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. *See also State v. Brenckle*, 14-883 (La. App. 5 Cir. 5/14/15), 170 So.3d 1141, 1150-51; *State v. Mussall*, 523 So.2d 1305 (La. 1988); *State v. Williams*, 98-1146 (La. App. 5 Cir. 6/1/99), 738 So.2d 640, 648, *writ denied*, 99-1984 (La. 1/7/00), 752 So.2d 176. Under the *Jackson* standard, a "review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *State v. Le*, 13-314 (La. App. 5 Cir. 12/12/13), 131 So.3d 306, 312; *Williams*, 738 So.2d at 648.

It is not the function of the appellate court to assess credibility or reweigh the evidence; rather, a reviewing court must consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. *Williams*, 738 So.2d at 648. *See also State v. Juluke*, 98-0341 (La. 1/8/99), 725 So.2d 1291. When the trier of fact is faced with conflicting testimony, the weight of the testimony lies solely with the jury or judge, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Williams*, 05-59 (La. App. 5 Cir. 5/31/05), 904 So.2d 830, 833; *State v. Bradley*, 03-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80, 84, *writ denied*, 03-2745 (La. 2/13/04), 867 So.2d 688.

In *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83, the Louisiana

Supreme Court declared:

> On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently **reasonable** that a rational juror could not have found proof of guilt beyond a reasonable doubt.

(Citations omitted; emphasis as found in the original.) *See also Williams*, 904

So.2d at 833.

Defendant was convicted of sexual battery upon a known juvenile under the

age of thirteen, a violation of La. R.S. 14:43.1, and indecent behavior with a

juvenile, a violation of La. R.S. 14:81. La. R.S. 14:43.1(A) defines sexual battery,

in pertinent part, as follows:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:
>
> (1) The offender acts without the consent of the victim.
>
> (2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender. …

La. R.S. 14:81(A) defines indecent behavior with juveniles, in pertinent part, as

follows:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. … .

In the absence of internal contradiction or irreconcilable conflict with

physical evidence, one witness's testimony, if believed by the trier of fact, is

sufficient support for a requisite factual conclusion. *State v. Robinson*, 02-1869

(La. 4/14/04), 874 So.2d 66, 79, *cert. denied*, *Robinson v. Louisiana*, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499; *State v. Perkins*, 11-162 (La. App. 5 Cir. 12/28/11), 83 So.3d 250, 255. With sexual offenses, the victim's testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *Perkins*, 83 So.3d at 255; *State v. Hotoph*, 99-243 (La. App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, *writs denied*, 99-3477 (La. 6/30/00), 765 So.2d 1062, and 00-0150 (La. 6/30/00), 765 So.2d 1066.

In *State v. Simon*, 10-1111 (La. App. 3 Cir. 4/13/11), 62 So.3d 318, 320, *writ denied*, 11-1008 (La. 11/4/11), 75 So.3d 922, the defendant raised issues of sufficiency of the evidence regarding his conviction of attempted sexual battery. During the trial, the State played the CAC interview of the six-year-old victim who described the events at issue. The victim also testified at trial and recounted those same events. The defendant contended that the child victim's testimony was the only evidence offered, no witness could support her claim, and her conduct was inconsistent with her claim. The appellate court noted the testimony of the victim alone could be sufficient to establish the elements of a sexual offense, even without physical evidence. The jury heard all of the testimony and found the child victim's version of the events credible. The Third Circuit stated that her "credibility should not be second-guessed by this court." Thus, the court found the evidence, when viewed in the light most favorable to the State, supported the guilty verdict rendered by the jury.

Defendant does not argue on appeal that the State failed to prove any specified essential statutory elements of either of the crimes for which he was convicted. Rather, defendant specifically challenges his convictions on the basis

that the State's case hinged solely on the testimony of K.N., and that her testimony was not credible.[13]

As previously stated, in sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *Perkins*, *supra*. While defendant questions the credibility of the victim, it is noted that the jury was instructed as to credibility and determination of the weight of a witness's testimony. The jury heard the testimony of K.N., who described in great detail the actions of defendant. K.N. also recounted the abuse to multiple authorities who testified in court, including her counselor and the forensic interviewer. The jury determined that the victim's testimony was credible, after listening to all of the witnesses. This Court should not second guess credibility determinations on appeal. *See State v. Chinchilla*, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1197, *writ denied*, 21-274 (La. 4/27/21), 314 So.3d 838, *cert. denied*, -- U.S. --, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021).

Furthermore, defendant has failed to support his arguments that the victim's testimony lacked credibility because she waited nearly a year to report the abuse, she only reported two incidents of abuse, no one else living in the house suspected the abuse was occurring, and a "real" sex offender would not "just stop after two incidents." We find, however, that the elements of the two offenses of which defendant was convicted do not require a pattern of behavior or multiple instances of behavior: one proven incident fulfills the statutory requirements of the elements

---

[13] Because defendant does not raise any arguments relating to sufficiency of the evidence with respect to the statutory elements, we do not address the evidence as it relates to each essential element. *See State v. Nelson*, 14-252 (La. App. 5 Cir. 3/11/15), 169 So.3d 493, 500 n.12, *writ denied*, 15-685 (La. 2/26/16), 187 So.3d 468; *State v. Henry*, 13-558 (La. App. 5 Cir. 3/26/14), 138 So.3d 700, 715, *writ denied sub nom. State ex rel. Henry v. State*, 14-962 (La. 2/27/15), 159 So.3d 1064.

of either offense. Also, the fact that defendant's father and sister testified that they failed to suspect any abuse is consistent with their own testimony that the victim was known to play the Xbox in her father's room with him present, thus explaining her regular presence in his room on multiple instances, and the victim's testimony that the abuse occurred in that room when she and her father were in the room with the door closed.

Accordingly, considering the law and the evidence admitted at trial, we find that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient under the standard set forth in *Jackson* to support defendant's convictions. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

### *Right to counsel of choice*

In this assignment of error, defendant argues that his Sixth Amendment right to counsel of choice was violated because the trial court would not allow him to discharge his retained trial counsel on the morning of trial. He argues in brief that he "was ready to hire another lawyer," but the trial judge made him choose to either represent himself or stay with trial counsel. Upon review, for the following reasons, we find no merit to this claim.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, an accused shall enjoy the right to have the assistance of counsel for his defense. *State v. Woods*, 09-399 (La. App. 5 Cir. 3/9/10), 38 So.3d 391, 410, *writ denied*, 10-784 (La. 10/29/10), 48 So.3d 1096. The Louisiana Supreme Court has found that it is both structural error requiring reversal, and a violation of the Sixth Amendment, when a criminal defendant has been denied his right to retained counsel of choice. *State v. Wilson*, 09-108 (La. App. 5 Cir. 12/29/09), 30 So.3d 149, 153. When the right to be assisted by counsel of choice

is wrongly denied, no harmless error analysis is required regarding counsel's effectiveness or prejudice to the defendant. *State v. Ventris*, 10-889 (La. App. 5 Cir. 11/15/11), 79 So.3d 1108, 1119.

The Louisiana Constitution ensures similar rights to the assistance of counsel for a criminal defendant as those arising under the federal constitution. *Ventris*, *supra*. Generally, a person accused in a criminal trial has the right to counsel of his choice. *Id.* The right is not absolute, however. *Ventris*, *supra*. While a person accused in a criminal trial generally has the right to counsel of his choice, a defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. *State v. Reeves*, 06-2419 (La. 5/5/09), 11 So. 3d 1031, 1057. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. *State v. Leggett*, 363 So.2d 434, 436 (La. 1978). It is further well established that a defendant in a criminal trial cannot, by a last-minute change of counsel, force a postponement. *State v. Williams*, 00-1850 (La. App. 5 Cir. 4/11/01), 786 So.2d 785, 790-91, *writ denied*, 01-1432 (La. 4/12/02), 812 So.2d 666.

The question of withdrawal or substitution of counsel largely rests within the discretion of the trial judge, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. *State v. Abdul*, 11-863 (La. App. 5 Cir. 4/24/12), 94 So.3d 801, 815, *writs denied sub nom. State ex rel. Abdul v. State*, 12-1224, 12-1226 (La. 10/12/12), 99 So.3d 41.

The transcript of the first day of trial, January 30, 2023, shows that as the first order of business, the court took up a motion to withdraw urged by trial counsel which asserted that on January 28, 2023, two days before trial, defendant

sent his trial counsel an email stating that he no longer wanted their representation, as he had "chosen to handle this matter with a different approach."

Defendant was sworn in and testified regarding the motion to withdraw. He claimed that there was little or no communication with his lawyers. Defendant alleged that defense counsel cancelled meetings with him. Both of defendant's counsel, however, informed the court at a bench conference that they had attempted to reach defendant and set up meetings with him, but were unsuccessful. The judge noted that she had seen defendant at numerous status conferences that had taken place since the matter was set for trial, on September 27, 2022, and that this issue had never been raised. She noted that defendant could have raised this issue at status conferences held earlier that month, on January 5 and January 18, yet he had not done so. Defendant then asserted that after the January 18 status conference, his lawyers told him "everything was going to change from what we originally talked about," regarding witnesses. The trial judge told defendant that she was not continuing the trial, and that she had previously told him on the record that once the victim had been prepared to testify, the matter would proceed to trial. The judge offered defendant the choice between representing himself that day at trial, or proceeding with his current counsel. After being allowed to step out of the courtroom and think about it, defendant returned and decided to remain with his current trial counsel, stating that he had "no option."

Considering these circumstances, defendant failed to show he was attempting to exercise his right to choose an attorney at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. *See Reeves*, *supra*. *See also State v. Davenport*, 08-463 (La. App. 5 Cir. 11/25/08), 2 So.3d 445, 448, *writ denied*, 09-158 (La. 10/16/09), 19 So.3d 473.[14] There was also no

---

[14] In *Davenport*, *supra*, this Court found no merit to the defendant's argument that the trial court erred in denying his motion to continue on the morning of trial to hire private counsel. This court recognized that the defendant had ample time to hire counsel as there was over a two-

indication that defendant had come prepared with substitute counsel based on his statements made in court on January 30, 2023. Furthermore, defense counsel stated they were prepared to proceed to trial.[15] Upon review, we find no abuse of the judge's discretion in her ruling denying defense counsel's motion to withdraw. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

### *Denial of ability to present a defense*

In this assignment of error, defendant argues that the trial court erred in not allowing defense counsel to question the victim and her mother regarding the victim's past mental health issues, thus inhibiting defendant's ability to present a defense. Specifically, defendant argues that the trial judge erred in not allowing questions regarding the victim's alleged hospitalization in Shreveport for depression, her mother's alleged withholding of prescribed medication for depression, and his theory that the victim made up the allegations against defendant to seek attention from her mother, because she felt abandoned by her mother. Defendant avers that because the State's case lacked corroboration, the defense theory, if properly presented, "may well have been sufficient to plant reasonable doubt in the jury's mind." He argues that his proposed cross-examination was relevant to the witnesses' credibility and thus should have been allowed. He went on to argue in brief that the victim suffered from "delusions" that affected her credibility and that she suffered from a mental illness.

---

month period from the date of arraignment to trial for the defendant to retain new counsel. This Court also stated that the defendant did not show any specific prejudice in the denial of his motion to continue. This Court found no merit to the assignment of error. *Davenport*, 2 So.3d at 449.

[15] Although defendant did not move for a continuance of the trial, the situation in the instant case is analogous to *State v. Robinson*, 22-310 (La. App. 5 Cir. 4/12/23), 361 So.3d 1107, 1120, cited by the State, where this Court found no abuse in the trial court's discretion in denying a motion for a continuance on the day of trial to replace attorneys where the defendant had counsel that was prepared for trial.

The State responds that defendant was permitted substantial latitude in eliciting evidence in support of his theory of the case. The State cites to testimony elicited from Ms. Latino and K.N. regarding feelings K.N. had toward her mother and her previous thoughts about wanting to harm herself. The State argues that any initially probative value regarding K.N.'s prior hospitalization or medication use would be substantially outweighed by unfair prejudice and unnecessary embarrassment to the victim.

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. *State v. Jackson*, 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 852, *writ denied*, 04-1399 (La. 11/8/04), 885 So.2d 1118. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16; *State v. Robinson*, 01-273 (La. 5/17/02), 817 So.2d 1131, 1135. Confrontation means more than the ability to confront the witnesses physically. The main and essential purpose is to secure for the opponent the opportunity of cross-examination. *Id.* Cross-examination is the primary means by which to test the believability and truthfulness of the testimony and has traditionally been used to impeach or discredit the witness. *Id.*; *State v. Williams*, 04-608 (La. App. 5 Cir. 11/30/04), 889 So.2d 1093, 1100, *writ denied*, 05-81 (La. 4/22/05), 899 So.2d 559. However, the extent of cross-examination is not without limitation. In order for evidence to be admissible at trial, it must be relevant. *State v. Stevenson*, 13-156 (La. App. 5 Cir. 7/30/13), 121 So.3d 792, 794, *writ denied*, 13-2025 (La. 2/28/14), 134 So.3d 1175. The determination regarding the relevancy of tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *Stevenson*, *supra*.

Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law. La. C.E. art. 402. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403. *Stevenson*, *supra*. A trial court is not required to admit evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. *Stevenson*, *supra* (citing *State v. Wright*, 10-577 (La. App. 5 Cir. 2/15/11), 61 So.3d 88, 102, *writ denied*, 11-560 (La. 9/30/11), 71 So.3d 283).

"La. C.E. art. 103(A)(2) provides that 'Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [w]hen the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel' … 'by proffer, either in the form of a complete record of the excluded testimony or a statement describing what the party expects to establish by the excluded evidence.'" *State v. Calderon*, 16-690 (La. App. 5 Cir. 4/12/17), 220 So.3d 830, 836 (citing *State v. Thompson*, 12-409 (La. App. 5 Cir. 12/11/12), 106 So.3d 1102, 1109, *writ denied*, 13-111 (La. 8/30/13), 120 So.3d 258, and *State v. Magee*, 11-0574 (La. 9/28/12), 103 So.3d 285). This Court has held that if a party does not comply with this article by failing to make known to the court the substance of excluded evidence, an error predicated upon the evidence's exclusion is not preserved for appellate review.

Defendant failed to proffer any evidence of the victim's alleged hospitalization or any evidence of her mental health diagnosis or treatment, with medication or otherwise. Accordingly, this Court has nothing to review. Even so,

upon review, we find that the record reflects that the defense was allowed to present sufficient support of its theory. K.N. testified that she felt that her mother did not want to spend time with her, and that she felt she was not spending enough time with her mother because she would pick her up late from her grandmother's house. She testified as to how this made her sad and that she had these feelings since approximately 2019. She further testified that these feelings led her to thoughts of harming herself, though she did not, in fact, do so. The record established the defense theory as to "abandonment" felt by the victim, through her own testimony.

Even assuming that the trial court improperly ruled regarding the aforementioned evidentiary rulings, which we do not find, errors involving confrontation and cross-examination are subject to a harmless error analysis. *State v. Anthony*, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 928, *writ denied*, 21-176 (La. 10/12/21), 325 So.3d 1067, *cert. denied*, 598 U.S. --, 143 S.Ct. 29, 214 L.Ed.2d 214 (2022) (citing *State v. Marcelin*, 12-645 (La. App. 4 Cir. 5/22/13), 116 So.3d 928, 935, *writ denied*, 13-1485 (La. 1/10/14), 130 So.3d 321, *cert. denied*, 572 U.S. 1093, 134 S.Ct. 1951, 188 L.Ed.2d 971 (2014)). The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. *Anthony*, *supra*. The record provides that K.N. provided lengthy and detailed testimony as to the sexual abuse by her father. According to other witness testimony, her disclosures regarding the abuse remained the same. The defense was able to present its theory, as previously discussed, via K.N.'s own testimony about feelings of abandonment. We find that the verdict actually rendered in the case was surely unattributable to the alleged error. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

### *Excessive Sentence*

In this assignment of error, defendant argues that his Eighth Amendment right against cruel and unusual punishment was violated when the trial court sentenced him to an excessive sentence. He specifically argues that the trial court imposed an excessive sentence when it ordered him to serve his sentence on each count consecutively, rather than concurrently. He argues that the trial court failed to articulate adequate reasons for imposing consecutive sentences in the instant matter, considering the weight of the evidence "or the lack thereof," and the lack of his history toward a lustful disposition of minors.[16]

The State responds that maximum or nearly maximum terms of imprisonment may not be excessive when the defendant had exploited a position of trust to commit sexual battery or indecent behavior with a juvenile, citing *State v. Rubio*, 22-205 (La. App. 5 Cir. 12/28/22), 357 So.3d 413, 423-24, *writ denied sub nom. Southland Engine Co, Inc. v. State through Dep't Transportation & Dev.*, 23-67 (La. 3/28/23), 358 So.3d 518. The State argues that defendant received a sentence in the lower half of the sentencing range as to both counts. The State avers that the record fully supports both the terms of imprisonment imposed and the consecutive nature of the sentencing in the matter. The judge noted that these two offenses occurred on different dates. Further, the State argues that the nature of the crimes and the relationship of defendant and the victim must also be

---

[16] The defense filed a motion to reconsider sentence on February 27, 2023, citing La. C.Cr.P. art. 883 and arguing that the crimes defendant was convicted of happened on two separate days "within a relatively short period." The defense also stated that defendant had no prior criminal convictions. The defense further argued that there was no indication that defendant would pose an unusual threat to the public after serving a forty-year sentence and that any opportunities for rehabilitation would be complete after this time. The defense argued the imposition of consecutive sentences was excessive and did not further the ends of justice.

A hearing on the motion to reconsider sentence was held on March 2, 2023. The court denied the motion, stating that its reasons for imposing a consecutive sentence were because it found that the instances were two separate ones.

considered. The State argues that the trial court did not abuse its broad sentencing discretion in this matter.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Woods*, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460.

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D). In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's discretion. *Calloway*, *supra*. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *See State v. Dixon*, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, 174, *writ denied*, 20-143 (La. 7/17/20), 298 So.3d 176. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).

In reviewing a trial court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. *Woods*, *supra*; *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing. *Woods*, *supra*. When two or more convictions

arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C.Cr.P. art. 883; *State v. Yelverton*, 12-745 (La. App. 5 Cir. 2/21/13), 156 So.3d 53, 66-67, *writ denied*, 13-629 (La. 10/11/13), 123 So.3d 1217.

> La. C.Cr.P. art. 883 provides:
>
> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

As discussed, defendant was sentenced on count one to forty years imprisonment with the Department of Corrections, with the first twenty-five years to be served without the benefit of parole, probation, or suspension of sentence. The penalty for the conviction is found in La. R.S. 14:43.1(C)(2), which provides in pertinent part, that whoever commits the crime "shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence."

As to count two, defendant was sentenced to ten years with the Department of Corrections, with the first two years to be served without the benefit of parole, probation, or suspension of sentence. The penalty for the conviction is found in La. R.S. 14:81(H)(2), which provides in pertinent part, that whoever commits the crime "shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence." The

sentences actually imposed were close to the mid-range for each count. Further, defendant received the minimum restriction of benefits for each count.

In the instant matter, according to K.N.'s testimony, defendant's actions took place on two separate occasions. K.N. testified in detail as to the two separate instances. The trial judge articulated at sentencing that the convictions arose from two separate instances and recognized the difficulty for K.N. when she had to testify and recount the events in court. In denying defendant's motion to reconsider, the trial court again expressed that the convictions arose out of separate operative facts occurring at different times. The trial court further articulated that she considered the gravity and dangerousness of the offenses, the viciousness of the crimes, and defendant's risk of danger to the public. Under the circumstances presented, we find that the record supports the imposition of consecutive sentences in the instant matter.

Nevertheless, even if the incidents constituted a "common scheme," the record supports the imposition of consecutive sentences.

In *State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, *writ denied*, 01-2965 (La. 10/14/02), 827 So.2d 414, the defendant was charged with one count of sexual battery and one count of indecent behavior with a juvenile upon the same victim. The defendant was sentenced to the maximum sentences at the time for both convictions. The trial court imposed the sentences consecutively. In addition to alleging that the sentences were excessive, the defendant alleged that the trial court did not articulate the reasons for imposing a consecutive sentence. This Court acknowledged that because the events occurred on the same day as part of a common scheme or plan by the defendant, there was a presumption in favor of concurrent sentences under La. C.Cr.P. art. 883. However, this Court recognized that immediately after stating the sentences would be consecutive, the trial judge stated that it was due to the severity of the crime, the vulnerability of the child

victim, and the use of the defendant's position as an adult neighbor in the commission of the offense. The trial court also noted the risk of safety that the defendant posed to the public as revealed in the pre-sentence investigation report. This Court found that based on the record and the reasons given by the trial judge, the trial judge did not abuse his discretion in making the sentences consecutive.

As previously explained, in the instant matter, the trial court stated that it took into consideration the gravity and dangerousness of the offenses, the viciousness of the crimes, whether defendant constitutes an unusual risk of danger to the public, and the vulnerable nature of K.N. who experienced sexual abuse by her father on more than one occasion. Under the circumstances presented, we find that the record supports the trial court's imposition of consecutive sentences in the current matter even if considered a "common scheme."

In light of the foregoing, we find that the trial court did not abuse its discretion in imposing consecutive sentences. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

### *Advisal of Post-Conviction Relief*

The record reflects that the trial court failed to advise defendant of the two-year prescriptive period for filing an application for post-conviction relief. Accordingly, by way of this opinion, defendant is advised that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts.

914 or 922. *See State v. Barnett*, 18-254 (La. App. 5 Cir. 4/3/19), 267 So.3d 209, 235.

***Inconsistencies in Uniform Commitment Order and Sentencing Minute Entry***

The Uniform Commitment Order ("UCO") states that as to count two, defendant was charged with "Indecent Behavior W/ Juvenile." Additionally, the sentencing minute entry also provides that defendant was found guilty on count two of "Indecent Behavior W/ Juvenile." However, defendant was charged with "indecent behavior with a juvenile under the age of thirteen" and was found guilty as charged as evident by the transcript of the reading of the verdict and verdict sheets.

The UCO also incorrectly lists the offense date for count one as "01/19/2020 – 9/1/**2022**," (emphasis added) when the offense date listed on the bill of information for count one is "on or between January 19, 2020 and September 1st in the year of our Lord, Two Thousand **Twenty**" (emphasis added).[17] The transcript of the reading of the bill to the jury as part of the preliminary jury instructions reflect the correct date of the offense. The transcript prevails where there is an inconsistency between the minute entry and the transcript. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

Accordingly, for purposes of maintaining accuracy and completeness of the record, we remand this matter for correction of the UCO and the sentencing minute entry to list the correct description of the charge and the correct date range for count one on the UCO. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the institution to which defendant was sentenced and to the Department of Corrections' legal department. *See State v. Bridgewater*, 22-517 (La. App. 5 Cir. 4/23/23), 362 So.3d 998, 1012 (where this

---

[17] The sentencing minute entry also states the correct date as reflected in the bill of information of "on or between January 19, 2020 and September 1 2020."

Court remanded the case with instructions to the trial court to correct the UCO to include the entire date range of the offense).

## DECREE

For the foregoing reasons, defendant's convictions and sentences are affirmed. The matter is remanded for correction of the Uniform Commitment Order and the sentencing minute entry, as noted above.

**AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER AND SENTENCING MINUTE ENTRY**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-KA-262

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)        THOMAS J. BUTLER (APPELLEE)        KATHRINE E. ELLIS (APPELLANT)
TIMOTHY T. YAZBECK (APPELLANT)

## MAILED

JEFFREY HUFFT (APPELLANT)
ATTORNEY AT LAW
3500 NORTH CAUSEWAY BOULEVARD
SUITE 185
METAIRIE, LA 70002

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
MATTHEW WHITWORTH (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053

JAMES A. WILLIAMS (APPELLANT)
ATTORNEY AT LAW
706 DERBIGNY STREET
GRETNA, LA 70053

BLAINE B. MONCRIEF (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
JUVENILE COURT
1546 GRETNA BOULEVARD
HARVEY, LA 70058